*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0066P (6th Cir.)
File Name: 04a0066p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BRANDYWINE, INC. d/b/a
EXPRESSWAY VIDEO and
GARY R. SEWELL,
    *Plaintiffs-Appellants,*

    *v.*

CITY OF RICHMOND,
KENTUCKY,
    *Defendant-Appellee.*

No. 02-5507

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 01-00283—Karl S. Forester, Chief District Judge.

Argued: October 29, 2003

Decided and Filed: March 3, 2004

Before: NORRIS, BATCHELDER, and COLE, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** H. Louis Sirkin, SIRKIN, PINALES, MEZIBOV
& SCHWARTZ, Cincinnati, Ohio, for Appellants. Douglas

L. McSwain, STURGILL, TURNER, BARKER &
MALONEY, Lexington, Kentucky, for Appellee.
**ON BRIEF:** H. Louis Sirkin, Jennifer M. Kinsley, SIRKIN,
PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, for
Appellants. Douglas L. McSwain, Bryan H. Beauman,
STURGILL, TURNER, BARKER & MALONEY,
Lexington, Kentucky, for Appellee.

NORRIS, J., delivered the opinion of the court, in which
BATCHELDER, J., joined. COLE, J. (pp. 11-15), delivered
a separate dissenting opinion.

———————————

**OPINION**

———————————

ALAN E. NORRIS, Circuit Judge. Plaintiffs Brandywine,
Inc. and Gary R. Sewell appeal from the district court's
dismissal of their constitutional challenge to the city of
Richmond's zoning scheme. They maintain that the district
court erred when it upheld Richmond's revocation of the
business license to their adult bookstore. For the reasons
given below, the order of the district court is affirmed.

**I.**

On June 25, 2001, plaintiff Gary R. Sewell, owner and
president of Brandywine, Inc., applied for a business license
in the city of Richmond, Kentucky. Sewell stated on his
application that his business would engage in the "Rental,
Sales & Exhibition of Video, Books, Magazines, e[tc.]" He
signed a statement promising that "No Movies, Books,
Magazines, Novelty item or any other item of an adult nature
will not [sic] be sold, distributed or given away or traded at
this location." City officials issued him a license. Despite his
disclaimer, Sewell proceeded to open a retail store selling
sexually explicit books and other materials.

On July 18, 2001, city officials notified plaintiffs by letter that their store was operating improperly under Richmond's zoning rules. The letter stated that the store was located in a B-3 business zoning district, and that businesses engaged in selling adult materials were only permitted to locate in I-2 industrial zones. The city revoked plaintiffs' business license and ordered that the store be closed.

Since the time that their business was closed, plaintiffs have expressed no interest in relocating. Nor have they attempted to appeal their license revocation through the process provided by Richmond's zoning rules.

## II.

Zoning in Richmond is governed by a Development Ordinance. The Ordinance divides Richmond into five zoning districts: agricultural, residential, business, industrial, and public/semi-public. Within each zoning district, the Ordinance establishes three categories of permitted land use: principal/primary, conditional, and accessory. Principal/primary uses are defined as uses "that are deemed to be most appropriate, and are permitted outright in a district without further review by the planning commission or the board of adjustment." Conditional uses are defined as "uses that may or may not be appropriate, dependent upon the situation. These uses may call for restrictions on location, size, extent, and character of performance in addition to those already imposed by the ordinance, and require review and permitting by [sic] the conditional use requiring review by the board of adjustments." The Ordinance gives the board of adjustments the power to "approve, modify or deny any application for a conditional use permit."

The Development Ordinance lists "bookstores" as principal/primary uses in B-3 zones, and provides that "[i]f a specific use is not listed, the closest related use will serve as the appropriate use category as determined by the planning commission."

At the time that plaintiffs applied for their license, the Development Ordinance included an April 2001 amendment that categorized "Adult Bookstores" as conditional uses in I-2 zones. It was this amendment that city officials relied upon when they revoked plaintiffs' license.

Upon the revocation of their business license, plaintiffs brought this action for declaratory, injunctive and monetary relief. They alleged that Richmond's zoning scheme unconstitutionally restricted their ability to exercise their First Amendment rights. They claimed that the April amendment forced adult businesses to locate in I-2 zones, where, as conditional uses, the determination of whether they obtained licenses was subject to the unbridled discretion of the board of adjustments. They also alleged that the language of the April amendment was unconstitutionally vague and overbroad, and that Richmond's enforcement of the zoning scheme resulted in the unconstitutional taking of their property.

Less than one month later, in August 2001, Richmond modified the Development Ordinance, reclassifying adult bookstores as principal/primary uses in I-2 zones. With this change, adult bookstores would no longer have to seek approval from the board of adjustments before locating in I-2 zones.

Despite the August amendment, plaintiffs continued to pursue their lawsuit. On March 29, 2002, the district court held that the Development Ordinance did not unconstitutionally restrict adult expression, and that the language of the April amendment was neither vague nor overbroad. It further held that plaintiffs lacked standing to challenge the conditional use procedure applied to adult bookstores in I-2 zones, and alternatively, that the August

amendment that classified adult bookstores as principal/primary uses in I-2 zones rendered plaintiffs' complaint about the conditional use procedure moot. Accordingly, the district court dismissed plaintiffs' action. This appeal followed.

## III.

### 1. Failure to Assert a Ripe Takings Claim

Plaintiffs argue that at the time that their license was revoked, Richmond's zoning scheme was unconstitutional because the April amendment only permitted adult businesses to locate in I-2 zones subject to the unbridled discretion of city officials. They contend that Richmond should have subjected them to the Development Ordinance as it existed prior to the April amendment, when no mention was made in the Development Ordinance of adult bookstores, and "bookstores" were categorized as principal/primary uses in B-3 zones.

Though plaintiffs have asserted a takings claim, that claim is premature. We ascertain whether a takings claim is ripe or not *de novo*. *Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1362 (6th Cir. 1992). A takings claim is not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Because plaintiffs never appealed the revocation of their license, the city never reached a final, definitive position regarding the application of the Development Ordinance to plaintiffs' business.

### 2. Standing

Plaintiffs appeal from the district court's determination that they lacked standing to challenge provisions of the zoning scheme that applied outside of B-3 zones because they had not demonstrated an intent to relocate. Plaintiffs argue that standing requirements are relaxed in challenges premised on First Amendment violations, and accordingly, that they should have been permitted to assert third party standing to challenge the conditional use procedure applied to adult bookstores in I-2 zones. They do not appeal the denial of their claim that that part of the Development Ordinance was vague or overbroad.

This court reviews *de novo* the district court's conclusions of law with regard to standing. *United States v. Miami University*, 294 F.3d 797, 806 (6th Cir. 2002). Where the district court has dismissed for lack of standing, we "accept as true all material allegations in the complaint, and construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Under traditional requirements for standing, plaintiffs must establish (1) injury in fact, meaning an invasion of a legally protected interest; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1074 (6th Cir. 1994). The district court correctly held that under these requirements, plaintiffs have standing to challenge the zoning scheme's ban on adult bookstores in B-3 zones, since they were injured in fact when they were forced to close their business, a causal relationship existed between the enforcement of the zoning scheme and the harm, and the injury was redressable by an award of monetary damages for lost business.

However, "a plaintiff may have standing to challenge some provisions of a law, but not others." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). In the instant case, plaintiffs never alleged any intention to locate outside a B-3 zone. Therefore, under the traditional requirements, they lack standing to challenge the provisions of the zoning scheme that do not relate to B-3 zones, including the application of the conditional use procedure to adult bookstores in I-2 zones.

Plaintiffs argue that they should be permitted to assert third party standing to challenge the conditional use procedure because they are mounting a First Amendment facial challenge to Richmond's zoning scheme. Where plaintiffs challenge a statute or ordinance for vagueness or overbreadth, the Supreme Court has concluded that they have standing to assert the rights of third parties whose protected speech may have been impermissibly curtailed by the challenged prohibition, even though as applied to the plaintiffs themselves, the ordinances only curtailed unprotected expression. *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 59 n.17 (1976).

In *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990), the Supreme Court concluded that the plaintiffs lacked standing to challenge "civil disability provisions" that barred individuals who had committed certain crimes or people residing with those individuals from obtaining business licenses, where none of the plaintiffs had committed the listed crimes or resided with someone who had. *FW/PBS*, 493 U.S. at 230-36 (plurality opinion). In *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220 (6th Cir. 1995), this court concluded that the plaintiffs lacked standing to challenge certain "disabling factors" that prevented them from obtaining business licenses, such as the failure to pay fees and the commission of certain crimes, because none of those "disabling factors" applied to them. *East Brooks Books*, 48 F.3d at 227-28. These cases indicate that plaintiffs may not

assert third party standing in every First Amendment facial challenge; rather plaintiffs may only do so in vagueness and overbreadth challenges. Accordingly, plaintiffs lack standing to challenge any provision of Richmond's zoning scheme inapplicable to B-3 zones.

### 3. Mootness

Plaintiffs appeal from the district court's conclusion that their claims were moot. We agree with the district court that although plaintiffs had standing to challenge those provisions of the zoning scheme that applied to B-3 zones, their claims for injunctive and declaratory relief were rendered moot by Richmond's enactment of the August amendment, which classified adult bookstores as principal/primary uses in I-2 zones. That amendment permitted adult bookstores to locate in I-2 zones without having to obtain permission from the board of adjustments. Plaintiffs do not challenge the constitutionality of the August amendment.

We review the district court's conclusions of law with regard to mootness *de novo*. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001). Claims become moot "when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1975) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Plaintiffs ask this court to declare unconstitutional the zoning scheme as it existed when their license was revoked and to enjoin Richmond from enforcing that scheme. We can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect.

Plaintiffs' reliance on *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982), is misplaced. Plaintiffs cite *Aladdin's Castle* for the proposition that the repeal of allegedly unconstitutional legislation does not render moot a claim for injunctive relief from its enforcement. Critical to

the holding in that case, however, was the fact that legislators had publicly expressed an intention to re-enact the offending legislation. No such threat was made in this case, so the passage of the August amendment to the Development Ordinance provides sufficient assurance that the April amendment will not be re-enacted. *See Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997). Therefore, plaintiffs' claims for declaratory and injunctive relief were properly dismissed as moot.

### 4.   *Failure to State a Valid Claim for Monetary Damages*

Plaintiffs' claim for monetary damages, however, was not properly dismissed as moot, because an award of monetary damages would compensate plaintiffs for the loss of the opportunity to engage in protected expression caused by the enforcement of the zoning scheme.

Though not moot, plaintiffs' claim for monetary damages must be dismissed for failure to state a claim upon which relief can be granted. The Constitution permits a city to require all sexually-oriented businesses to be located in a particular area within that city. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46 (1986). However, a city cannot legislate adult-oriented businesses out of existence. The First Amendment requires a city to provide a reasonable opportunity for adult speech somewhere within its borders. *Id.*

A claim alleging that a municipal zoning ordinance unconstitutionally restricts adult businesses would have to state that the zoning ordinance provided no reasonable opportunity for adult businesses to operate anywhere within the city. Stripped of those claims over which the district court lacked subject matter jurisdiction, plaintiffs' complaint only alleges that Richmond's zoning scheme, as modified by the April amendment, unconstitutionally restricted their right to operate in B-3 zones. Plaintiffs cannot assert a valid claim to

the effect that the scheme provided them with no reasonable opportunity to locate anywhere in Richmond.

### IV.

For the foregoing reasons, the district court's decision is **affirmed**.

———————

**DISSENT**

———————

R. GUY COLE, JR., Circuit Judge, dissenting. When this lawsuit commenced, adult businesses could be prohibited—per se or at the whim of local regulators—in the entire City. As a would-be proprietor of an adult business in the City, Brandywine is a proper party to challenge this scheme, and the suit survives the City's subsequent optional and reversible amendment of the Ordinance. Because Article III permits our review of Brandywine's claims, and because these claims establish that the challenged Ordinance violates the First Amendment, I respectfully dissent.

*A. Standing*

In holding that Brandywine lacks standing, the majority artificially slices Brandywine's challenge into component parts—separating its challenge to the Ordinance as a whole into discrete challenges to the respective regulations governing zones B-3 and I-2. But we must evaluate the city's regulatory scheme in the aggregate: the First Amendment requires an adequate opportunity for adult businesses to operate in a given city, not in any particular zone. A total ban in either zone would be perfectly legal so long as the other provided sufficient space for adult businesses. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986). Moreover, that a total ban in one zone is constitutional in some circumstances does not mean that it would be constitutional alongside a total ban or other undue restrictions in all other zones. *See, e.g., Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 75-76 (1981); *Christy v. City of Ann Arbor*, 824 F.2d 489, 492 (6th Cir. 1987). Brandywine argues—consistent with the First Amendment's approach to the regulation of adult businesses—that given zone I-2's restrictions, the restrictions on zone B-3 are unconstitutional.

We can evaluate one zone without the other no more than we can measure night without day.

Moreover, the district court's holding that this suit could not redress Brandywine's injury, a conclusion that the majority implicitly ratifies, rests on a misreading of the Ordinance. The district court determined, as the City argued, that were we to determine that the Ordinance provides insufficient space for adult businesses, we would automatically nullify the restrictions on adult businesses operating in zone I-2, allowing adult businesses full access to that zone and leaving all other zones' restrictions unscathed. The Ordinance provides no such directions. It does provide that "[s]hould any section or provisions of the regulations be, for any reason, held void or invalid, it shall not affect any other section or provision thereof which is not itself void or invalid." Thus, if Brandywine's challenge could be separated into component parts, we could save the Ordinance by jettisoning only the offending part. But under Kentucky law, which governs whether we may sever a problem provision from its neighbors, *see City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988), a statute cannot simply shed its lone unconstitutional provision when—as is the case here—all of the statute's parts are inseparably connected. *See* KRS § 446.090. As I explained above, the First Amendment doctrine governing this challenge demands that we view the Ordinance in the aggregate. If the Ordinance provides inadequate space for adult businesses, we must invalidate the whole thing.

Brandywine's challenge, including its requests for both monetary and injunctive relief, necessarily engulfs the entire Ordinance. Brandywine's lack of connection with zone I-2—the supposed gap in its standing—is a red herring.

### B.    Mootness

The majority's alternative basis for affirming the dismissal of Brandywine's request for injunctive relief—that the action is moot—flatly contradicts the Supreme Court and our own precedent. Because the City amended the Ordinance (less than a month) *after* Brandywine filed suit, the City retains the burden of showing that its amendments moot this challenge. In *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000), the Supreme Court reaffirmed that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to occur." *Id.* at 190 (emphasis added). The possibility looms that the City will reenact the prior version of the Ordinance once this case is dismissed, and the City has offered no indication that its most recent amendment is permanent. And unlike a state or federal legislature, which must massage the esoteric desires of scores of representatives in two houses, a city council can enact new measures with relative ease. Indeed, the record demonstrates how readily and easily the City can amend the Ordinance: it did so twice in the five-month period between April 2001 and August 2001.

Yet the majority inverts the burden. According to the majority, today's case is moot because City officials have not vowed to restore the offending provisions following dismissal. But Brandywine does not have to show that the challenged conduct will occur again; the City must make it "absolutely clear" that it will not. Thus, in *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003), we considered a challenge to certain regulations promulgated by the Michigan Department of Corrections (MDOC), even though these regulations had since been repealed. In rejecting the defendant's contention that its voluntary repeal mooted the case, we noted that "as the promulgation of work rules appears to be solely within the discretion of the MDOC, there

is no guarantee that MDOC will not change back to its older, stricter Rule as soon as this action terminates." *Id.* at 1035. And in *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) (en banc), *cert denied*, *Snyder v. Rosales-Garcia*, 123 S.Ct. 2607 (2003), we rejected the government's assertion that an immigrant's challenge to her detention was mooted by her parole, because the INS had the discretion to return her to custody and the government had "made no . . . promise [that her parole would continue uninterrupted]." *Id.* at 397.

At no point has the City promised that the offending scheme is gone for good. Short of such an assurance, it cannot meet its burden under *Friends of the Earth*. The majority's refusal to hold the City to its burden is at odds with both Supreme Court and Sixth Circuit precedent. And it risks producing a cycle of amendment, mootness, and reamendment—the very cycle that mootness doctrine prohibits.

### C.    First Amendment

Because Article III allows us to consider Brandywine's First Amendment challenges to the Ordinance, as it existed when Brandywine filed its complaint, we apply the familiar standards espoused by the Supreme Court. A total ban on adult business receives strict scrutiny; the restriction of such businesses to certain areas, however, we analyze as a time, place, and manner regulation. *Renton*, 475 U.S. at 46. Although the City prohibits adult businesses in zone B-3, it permits them in zone I-2. Moreover, a time, place, and manner restriction must be justified without reference to the content of the speech. Here, the ordinance is aimed not at the content of adult businesses *per se*, but "rather at the *secondary effects* of such theaters on the surrounding community." *Id.* at 47 (emphasis in original).

We therefore reach the case's crux: "whether the [Ordinance] is designed to serve a substantial governmental

interest and allows for reasonable alternative avenues of communication." *Id.* at 50. Assuming, for the sake of argument, that the City's interest is substantial, the Ordinance provides for inadequate alternative spaces for adult businesses to operate. Even in zone I-2, the one place in which the City purports to allow adult businesses, they would have to meet the requirements of a "conditional use." The Ordinance defines a conditional use as one:

> which is essential to or would promote the public health, safety, or welfare in one or more zones, but which would impair the integrity and character of the zone in which it is located, or in adjoining zones, unless restrictions on location, size, extent and character of the performance are imposed in addition to those imposed in the zoning regulation.

When considered in conjunction with the entire Ordinance, the amorphous criteria that an adult business must satisfy hardly provide a guarantee that adequate alternative avenues exist. *Cf. Plain Dealer Publ'g Co.*, 486 U.S. at 769-70 (invalidating restrictions on adult businesses that vest too much discretion to the government licensors). The First Amendment requires that the City "refrain from effectively denying [its citizens] a reasonable opportunity to open and operate an adult theater within the city." *Renton*, 475 U.S. at 54. Under the Ordinance, any adult business that the City deems inconsistent with "the integrity and character of the zone" would find itself without any location in the City in which to operate—a result that the First Amendment prohibits.

Because I conclude that Brandywine has standing to challenge the Ordinance, that its challenge is not moot, and that the Ordinance violates the First Amendment, I would reverse the judgment of the district court and remand for the issuance of an injunction and the computation of Brandywine's damages. I respectfully dissent.