**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0305n.06
Filed: May 29, 2008

**No. 07-4089**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NORTHERN OHIO CHAPTER OF ASSOCIATED BUILDERS & CONTRACTORS, INC., INDUSTRIAL ENERGY SYSTEMS, INC., TOWN CENTER CONSTRUCTION, LLC, MICHAEL DRAGICS, and THE BLACK CONTRACTORS GROUP, | ) ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| METROHEALTH SYSTEM, et al. | ) ) | |
| Defendants-Appellees. | ) ) | |
| _____ | ) | |

BEFORE: KENNEDY, BATCHELDER, and GRIFFIN, Circuit Judges.

PER CURIAM.

This case regards challenges to labor agreements involving several local government construction projects in Cuyahoga County, Ohio. Plaintiffs argue that the labor agreements are illegally broad and are preempted by federal law. The district court ruled that the projects had either been completed, or that the contract terms had been amended to unambiguously conform with federal law. Accordingly, the district court dismissed plaintiffs' claims for lack of an active case or controversy. We affirm for the reasons stated below.

I.

Plaintiffs challenge the legality of three construction projects in Cleveland, Ohio. Two of these projects (the "South Campus" project and the "Hamann" project) involve MetroHealth, a public teaching hospital, and the third involves the county jail. Plaintiffs object to the "project labor agreements" ("PLAs") associated with these projects. The PLAs require that "all work be performed by Employers who are or become bound by a collective bargaining agreement with the appropriate craft union signatory to this Agreement." Thus, any contractor, whether unionized or not, could submit a bid. But if the bidder was not a union contractor, it would need to become one for the duration of the project. Plaintiffs argue that the PLAs in this case are open-ended, but concede that project-specific PLAs are permissible as described by the Supreme Court in *Building & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218 (1993). According to plaintiffs, once an employer assents to one of these PLAs, the employer has effectively become a union shop for the duration of the project and for all future projects.

The district court dismissed the case for lack of jurisdiction. It noted that the South Campus project had been completed, and thus it could not grant relief to plaintiffs. Regarding the Hamann project, the district court noted that the MetroHealth Board of Trustees explicitly limited the scope of the PLA to the duration of the project – thus removing any ambiguity about its project-specific duration. The district court also dismissed the claim against the Board of County Commissioners ("BOCC") regarding the jail project after the BOCC notified the district court that the jail project did not have a PLA associated with it and that there were no county construction projects containing such a PLA. Plaintiffs timely appealed.

II.

MetroHealth

Plaintiffs argue that because MetroHealth had used the allegedly invalid PLAs in the past, and because an invalid PLA was still in effect during the ongoing construction for the South Project, MetroHealth had a history of illegal conduct, and MetroHealth's recent conduct is merely a voluntary cessation of the previous illegal conduct in an attempt to moot the case. This argument lacks merit. MetroHealth has clearly indicated its desire to comply with exactly what plaintiffs are seeking in this case; MetroHealth has passed a new resolution requiring future PLAs to mandate that the underlying collective bargaining agreements be project-specific.

While it is true that MetroHealth could always pass another resolution and return to its purportedly illegal ways, that is not a reason to consider this a live case. In *Deja Vu of Cincinnati, L.L.C. v. Union Township Bd. of Trustees et al.*, 411 F.3d 777, 782 (6th Cir. 2005) (en banc), the municipality did not modify its conduct until after the appeal was filed: "While the appeal and cross-appeal were pending [in our Court], Union Township enacted Resolution No. 00-22 to amend and replace Resolution No. 99-15, thereby eliminating those provisions that the district court had [already] determined were likely to be held unconstitutional." The plaintiffs in that case asserted that the claims regarding the original provisions should still be adjudicated because the defendants had merely voluntarily ceased their illegal activity. 411 F.3d at 795. However, we disagreed, stating that "[t]his [situation] is in contrast to the more typical situation . . . in which the municipality amended its ordinance only after certain provisions were voided by the district court, and where the

municipality repeatedly expressed its intention to reenact those portions of the Ordinance judged unconstitutional at the earliest opportunity." *Id.* (quotation marks and ellipsis omitted).

*Deja Vu's* holding is consistent with *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637 (6th Cir. 1997). In that case, Kentucky had enacted various campaign finance laws to combat widespread corruption of public officials. *Terry*, 108 F.3d at 639. The law was then challenged as violative of the First Amendment. *Id*. After the suit was filed, and most likely "in direct response to plaintiffs' suit," the Kentucky legislature amended the statute to remove the language and terms plaintiffs had challenged. *Id.* at 643 & n.14. Kentucky therefore argued that most of plaintiffs' claims had been mooted, while plaintiffs asserted that their claims were not moot because "the Kentucky General Assembly remains free to reenact the prior statutory scheme." *Id*. at 644. On appeal, we ruled in favor of the state, holding that the voluntary cessation exception to mootness "properly applies only when a recalcitrant legislature clearly intends to reenact the challenged regulation." *Id*. at 645. We did not believe this standard was met because "[t]he record before us [wa]s devoid of any expressed intention by the Kentucky General Assembly to reenact the prior legislative scheme." *Id*.

The narrowness of the voluntary cessation exception was also expressed in *Brandywine, Inc. v. City of Richmond*, *KY*, 359 F.3d 830 (6th Cir. 2004). Less than one month after plaintiffs filed suit challenging a city ordinance, the city modified the ordinance and removed much of what plaintiffs had challenged. *Brandywine*, 359 F.3d at 833-34. We stated that, "[p]laintiffs ask this court to declare unconstitutional the zoning scheme as it existed when their license was revoked and to enjoin Richmond from enforcing that scheme." *Id.* at 836. We then ruled that a court "can neither declare

unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Id.* We did not find the voluntary cessation exception to be present because there was "[n]o such threat" to reenact the offending legislation and passage of the alterations were taken as "sufficient assurance that the [offending legislation] will not be re-enacted." *Id.*

These holdings make clear that plaintiffs have no claim against MetroHealth. MetroHealth has enacted a new policy that specifically states it will do exactly what plaintiffs sought in this suit, namely require that the unions agree to provide a project-specific collective bargaining agreement to the contractors. Plaintiffs' claims against MetroHealth, therefore, are moot.

III.

Cuyahoga County Board of Commissioners

Plaintiffs argue that the voluntary cessation exception to mootness should apply in their case against the BOCC because the BOCC had an established practice of using allegedly illegal PLAs. As evidence of this established practice, plaintiffs point to the BOCC's general resolution establishing the objected-to terms, as well as to the BOCC's inclusion of an allegedly illegal PLA in the bidding documents for the Jail Project.

The district court erred in ruling against plaintiffs on this argument. At the time of the district court's ruling, Resolution 050501 was still in effect. The resolution established that the allegedly non-project-specific PLAs were presumptively appropriate for construction projects exceeding $250,000. After the district court's decision, however, the BOCC rescinded the resolution. While the district court was incorrect at the time because the general resolution was still

in effect, the resolution has now been repealed, and we can acknowledge and consider that fact when we consider mootness on appeal. *See, e.g.*, *DeFunis v. Odegaard*, 416 U.S. 312, 316-17 (1974).

Given the facts at the time of this appeal, plaintiffs' arguments against mootness fail. As detailed in the cases analyzed with respect to MetroHealth, the voluntary cessation exception is exceedingly narrow. The BOCC asserts, without proof to the contrary, that a PLA was in fact never used on any project to date. Additionally, the BOCC has, after the district court's decision, rescinded the general resolution to which plaintiffs objected. The BOCC has never expressed an intention to at any point return to using the allegedly illegal PLAs. The voluntary cessation exception to mootness, therefore, does not apply in this case.

IV.

Other Arguments Regarding Both Defendants

The only other potential argument for plaintiffs to withstand mootness is a request for damages. *See, e.g.*, *Ashcroft v. Mattis*, 431 U.S. 171, 171-72 (1977). Plaintiffs would then only have to prove a past instance of allegedly illegal conduct that injured them, rather than an ongoing purportedly illegal practice. Damages are a request for retrospective relief, and past instances of allegedly illegal conduct would suffice to establish a live case or controversy. Plaintiffs assert in their brief that they would like an "award [of] damages." Plaintiffs further assert that even if they do not have actual damages, nominal damages should still be awarded.

Plaintiffs, however, cannot rely on this argument. In their complaint, plaintiffs only request "injunctive and declaratory relief." In the section entitled "Requests for Relief," plaintiffs only ask

for declaratory judgment, as well as different sorts of injunctions. The only request for money is a request for "attorneys' fees and costs," which does not constitute a request for damages. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107-08 (1998).

V.

We are not persuaded by plaintiffs' arguments that exceptions to the mootness doctrine apply. For these reasons, we conclude that there is no active case or controversy, and we affirm the judgment of the district court.