**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0520n.06

No. 17-3358

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 19, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| WAYNE WATSON ENTERPRISES, LLC and WAYNE W. WATSON, | ) ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| CITY OF CAMBRIDGE and JEFFREY MCCONAUGHY, Director City of Cambridge, Engineering and Utilities, | ) ) ) | |
| | ) | **OPINION** |
| | ) | |
| **Defendants-Appellees.** | ) | |
| | ) | |

Before: SUHRHEINRICH, MOORE, and BUSH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** This case is about a proposal to lay a few yards of concrete, which would create an "access road," over a public right-of-way that fronts a car wash and a Wendy's Restaurant. The proposed "road" would sit entirely within the public right-of-way. But this proposal could potentially increase traffic in front of Plaintiff Wayne Watson's car wash, due to Wendy's customers coming and going. And that's where the beef is in this case. Watson argues that the City and this plan to create the access road violate his constitutional rights. We disagree.

The district court issued a thorough opinion and entered summary judgment for the City of Cambridge and its City Engineer. For the reasons that follow, we **AFFIRM**.

## I.  BACKGROUND

Wayne Watson is the owner and sole member of Wayne Watson Enterprises, LLC (hereinafter, collectively referred to as "Watson").  R. 27-12 (Watson Dep. at 5–6) (Page ID #708–09).  Watson owns two parcels of land, where he operates a car wash business, along State Route 209 in the City of Cambridge, Ohio.  *Id.* at 7; R. 16 (Am. Compl. at 2) (Page ID #265).  Both parcels are fronted by an "81.16" feet public right-of-way.  R. 26-3 (1986 Survey Plat) (Page ID #483); R. 26-4 (1990 Survey Plat) (Page ID #485).  A Wendy's Restaurant is next door.  The restaurant is separated from Watson's property by grass and a small barrier (and thus cars cannot drive directly from the Wendy's to the car wash without going onto Route 209).  *See* R. 25-2 (Wilcox Decl. Ex. A) (Page ID #403); R. 29-1 (Myers Report) (Page ID #1008).  At the head of Watson's parcel situated nearest to the Wendy's sits a traffic light, which permits his customers to make a protected left turn onto Route 209.  *See* R. 25-2 (Wilcox Decl. Ex. A) (Page ID #401–03).

In the fall of 2014, the Wendy's operators submitted a site plan for a proposed demolition and reconstruction of the restaurant to the City of Cambridge.  R. 26-7 (Sherry Aff.) (Page ID #495). This plan included a proposed connection of the right-of-way, which would allow Wendy's customers to make the protected left turn.  *Id.*  This proposed connection is referred to as the "access road."

At a public meeting on Wednesday, October 29, 2014, the Cambridge City Council approved Ordinance 50-14, which authorized the "construction of an access road at no cost to the City by a private contractor.  Said construction is to be inspected and the project to be over seen [sic] by the City Engineers Department.  The project will be located on Southgate Parkway, in the

2

vicinity of Wendy's Restaurant." R. 16 (Ex. C, Ordinance No. 50-14) (Page ID #298). Watson received no direct notice of this council meeting and did not attend the meeting. At an October 6 meeting of the City Services Committee, however, the City's Director of Engineering and Utilities, Paul Sherry,[1] acknowledged that he thought "there will be some push back from Mr. Watson." *Id.* (Ex. A, Meeting Minutes) (Page ID #288).

Several months later, on February 9, 2015, Sherry sent Watson a letter notifying Watson that the City approved the access road "to be completed in conjunction with the reconstruction of the Wendy's restaurant." R. 16 (Ex. D) (Page ID #299). The letter continued, "The goal is to create a safer northbound egress option from these businesses via the signal at Woodlawn Ave. Southbound traffic will still have the existing access points at each business." *Id.* The stated goal is consistent with Sherry's comments during the October 6 City Services Committee meeting. *Id.* (Ex. A, Meeting Minutes) (Page ID #288). The letter also attached the proposed plans for the project. *Id.* (Ex. E) (Page ID #301).

Four months after that, at a public meeting on June 8, 2015, the City Council passed Ordinance 38-15, which authorized "the establishment of access roads in the City of Cambridge." R. 16 (Ex. H, Ordinance No. 38-15) (Page ID #310). This ordinance also authorized the City Engineer (at that time, Paul Sherry) to develop guidelines for the construction of access roads. *Id.* Watson's Amended Complaint states that Watson attended this meeting himself and, through his

---

[1]Paul Sherry is no longer the City Engineer; Jeffrey McConaughy has since replaced Sherry.

attorney, voiced his concerns about the access road to no avail.  R. 16 (Am. Compl. at 10, ¶ 55) (Page ID #273).[2]  Thus, the project moved forward.

Watson has several concerns with this access road.  From a process perspective, Watson argues that he should have received individual advance notice of the October meeting at which the City Council passed Ordinance 50-14, the approval of that ordinance was arbitrary, and the Council then "abdicated its statutory responsibilities" over roads to the City Engineer with Ordinance 38-15.  R. 16 (Am. Compl. at 2) (Page ID #265).  As to the substance, Watson argues that the ordinances are unconstitutionally vague and that the access road will destroy his business and pose a public safety hazard.  *See, e.g.*, *id.* at 8–9, 13–14 (Page ID #271–72, 276–77); Appellant Br. at 21.

Due to his concerns, Watson filed suit in state court against the City of Cambridge and Sherry (hereinafter collectively referred to as, "the City").  There, he obtained a temporary restraining order and a preliminary injunction that halted the project.  Then, the City removed the case to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §§ 1331, 1441, 1446.  Both parties filed cross-motions for summary judgment in the district court, and the district court granted the City's motion.  *Wayne Watson Enters., LLC v. City of Cambridge*, 243 F. Supp. 3d 908 (S.D. Ohio 2017).

---

[2]But Watson also stated in his deposition that he did not attend any meetings and did not know what opportunity his attorney had to express concerns about the project.  R. 27-12 (Watson Dep. at 80–81) (Page ID #783–84).

No. 17-3358, *Wayne Watson Enterprises, LLC et al. v. City of Cambridge et al.*

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Med Corp. v. City of Lima*, 296 F.3d 404, 408 (6th Cir. 2002). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Initially, the moving party bears the burden of "demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Then the nonmoving party must point to evidence that shows there is more than some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. PROCEDURAL AND SUBSTANTIVE DUE PROCESS

Watson raises three issues on appeal, all of which sound in due process. The first two arguments relate to procedural and substantive due process. He further argues that the City Ordinances that authorized the access road are unconstitutionally vague.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Watson's arguments on both procedural and substantive due process raise the question of whether he has a constitutionally protected property interest. *See Wedgewood Ltd. P'ship I v. Township of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010); *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). Even if Watson has a protected property interest, he must show that the government

5

deprived him of that interest. *See Wedgewood*, 610 F.3d at 349; *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005). Watson cannot make such a showing, so both of his due process claims fail.

## A. Procedural and Substantive Due Process

Both procedural and substantive due process claims require Watson to show that he has a property interest that was deprived. To establish a procedural due process violation under 42 U.S.C. § 1983, plaintiffs must show: "(1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . ., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state [or here, the City] did not afford them adequate procedural rights prior to depriving them of their protected interest." *Med Corp.*, 296 F.3d at 409 (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)); *Wedgewood*, 610 F.3d at 349. To succeed on his substantive due process claim, Watson must show that an "arbitrary and capricious government action deprive[d] [him] of a constitutionally protected property interest." *Warren*, 411 F.3d at 707.

Property interests "are not created by the Constitution" itself, but rather "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002). Watson claims that he has property interests in the use and enjoyment of his property, the safe operation of his business, and in safe access to and from the car wash. Appellant Br. at 24; Reply Br. at 13–16. Here, we look to Ohio state law to determine whether he has property interests at stake.

6

Although the Ohio Supreme Court has recognized Watson's claimed property interests at a high-level of generality, his arguments do not hold up on the facts of this case. First, the Ohio Supreme Court has explained that, "[t]he rights related to property, i.e., to acquire, use, enjoy, and dispose of property, are among the most revered in our law and traditions." *City of Norwood v. Horney*, 853 N.E.2d 1115, 1128 (Ohio 2006) (internal citation omitted). This language, however, is not applicable to this case because the public right-of-way is not Watson's property to use or enjoy, and the proposed access road sits entirely within that public right-of-way.[3]

Second, the Ohio Supreme Court has also stated that "the right to do business" is "equally sacred" as free speech, "and the privilege of free speech cannot be used to the exclusion of other constitutional rights nor as an excuse for unlawful activities with another's business." *Eastwood Mall, Inc. v. Slanco*, 626 N.E.2d 59, 61 (Ohio 1994) (quoting *Crosby v. Rath*, 25 N.E.2d 934, 935 (Ohio 1940)). But again, the cases on which Watson relies are not on point. The City has not imposed a regulation on Watson or limited his business operations.

Third, Ohio recognizes a private right of access, for the purposes of ingress and egress, from private property to a public road. *See State ex rel. Merritt v. Linzell*, 126 N.E.2d 53, 55–56 (Ohio 1955). The Ohio Supreme Court has held that, "any governmental action that substantially or unreasonably interferes with this right constitutes a taking of private property" that requires just

---

[3]*See* R. 26-3 (1986 Survey Plat) (Page ID #483); R. 26-4 (1990 Survey Plat) (Page ID #485); R. 26-5 (Deed to Wayne Watson, Parcel No. 06-08215.001) (Page ID #487); R. 26-6 (Deed to Wayne Watson, Parcel No. 06-08215.002) (Page ID #491); *see also* R. 16 (Ex. E, Access Road Plan) (Page ID #301); *see also* R. 17-3 (Answer to Am. Compl., Ex. 3) (Page ID #342) (highlighted area showing that the access road sits within the right-of-way).

compensation.  *State ex rel. OTR v. City of Columbus*, 667 N.E.2d 8, 15 (Ohio 1996).  But at the same time,

> Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient.

*Merritt*, 126 N.E.2d at 56.  This case does not concern a taking—Watson seeks to stop the access road's construction, not just compensation—but *Merritt* and *OTR* nonetheless help clarify the contours of the property interest at stake.  In short, if Watson's and his customers' access to and from his business via the public right-of-way were "substantially impaired," he would have a property interest at stake; on the other hand, if the access road merely made travel inconvenient, that would not trigger this property interest.  *Compare Warren*, 411 F.3d at 709–12 (upholding an injunction based on a city "erecting barricades across one of the two means of access to" an ice cream shop), *with Richley v. Jones*, 310 N.E.2d 236, 236–40 (Ohio 1974) (construction of a median strip caused an inconvenience to a landowner, but not loss of access, and thus the landowner received no compensation).

This is a case of possible inconvenience, not an impairment of a property interest. Watson's properties do not extend into the public right-of-way,[4] even though he may feel otherwise.  R. 27-12 (Watson Dep. at 110–11) (Page ID #813–14).  But Watson has a property interest in access to the public right-of-way.  That leads to the most important point:  It is

---

[4]R. 26-3 (1986 Survey Plat) (Page ID #483); R. 26-4 (1990 Survey Plat) (Page ID #485); R. 26-5 (Deed to Wayne Watson, Parcel No. 06-08215.001) (Page ID #487); R. 26-6 (Deed to Wayne Watson, Parcel No. 06-08215.002) (Page ID #491).

undisputed by Watson himself and one of his experts that, if this road is built, customers will not be blocked from accessing his business from either State Route 209 or the public right-of-way. *Id.* at 63–64, 68–69 (Page ID #766–67, 771–72); R. 29 (Myers Dep. at 51–52) (Page ID #999–1000). The upshot is that, to the extent Watson has a property interest at stake, that interest has not been diminished within the meaning of the Due Process Clause based on the facts in this record.

Watson and his experts,[5] however, contend the access road poses an increased danger to employees and customers. As to the employees, one expert's photos of the car wash show that the employees are in the public right-of-way. *See* R. 29-1 (Myers Report) (Page ID #1011); Survey Plats and Deeds, *supra* footnote 3. As to the customers, one expert claims that "[s]team and condensation may and will occur, especially during the winter months," which will in turn lead to decreased visibility. R. 29-1 (Myers Report) (Page ID #1012). This supposed safety concern has nothing to do with the access road—if steam and condensation block a driver's view, driving would be dangerous regardless of the access road. Watson's expert further explained that his conclusions on the safety concerns were based on drivers' ability to pick either of the exits fronting Watson's properties, R. 29 (Myers Dep. at 26, 34–39) (Page ID #974, 982–87), and his experience in law enforcement observing aggressive drivers (who would bypass the protected-left exit). *Id.* at 34–35 (Page ID #982–83). But the expert also admitted that, to date, the traffic arrows in place have been sufficient to guide drivers, *id.* at 31–32 (Page ID #979–80), a traffic signal "definitely makes

---

[5]We will focus Myers's report and deposition. The Wilcox declaration is a one page report, along with attached pictures, and it summarily concludes that Watson's property will need to be redeveloped because of this access road. *See* R. 25-2 (Wilcox Decl.) (Page ID #400).

it safer" to turn into an intersection, *id.* at 39 (Page ID #987), and that if Wendy's customers chose to exit at the light, that would present no safety risk to anyone leaving the car wash. *Id.* at 48 (Page ID #996). For his part, Watson fears that all drivers will go to the light, R. 27-12 (Watson Dep. at 75) (Page ID #778), Wendy's customers will cause problems when they drop hamburgers on their laps, *id.* at 108 (Page ID #811), and the resulting congestion will destroy his business. *Id.* at 96 (Page ID #799).

This evidence is simply not enough to raise more than a metaphysical doubt as to whether Watson's property interests will be deprived. If there were more than an abstract claim that Watson's customers were in fact going to be turned away from the car wash business because of the possible congestion and hazards caused by the access road, this case might be different; or if Watson and his customers were in fact blocked from accessing his business, this case might be different. In those situations, Watson's and his customers' access to and from the business would be hindered such that the creation of the access road might deprive Watson of a property right of ingress and egress under Ohio law, *see Merritt*, 126 N.E.2d at 55–56, and perhaps his right to do business, *see Eastwood Mall*, 626 N.E.2d at 62. But because the right-of-way is not part of Watson's property, and because any property interests he does have will not be deprived, Watson received all the process he was due through the general public notice of the city council meeting. Accordingly, we conclude that Watson's procedural and substantive due process claims fail.

Because Watson has no property interest that is being deprived, we need not address his separate argument that the City's approval of the access road was a "random and unauthorized act." R. 16 (Am. Compl. at 15) (Page ID #278). Moreover, for the same reason, we need not

10

analyze whether Watson can meet his burden on the rational basis standard for whether the City's actions were "arbitrary and capricious." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221–22 (6th Cir. 1992).

## B. Void for Vagueness

Finally, Watson challenges Ordinances 50-14 and 38-15 as unconstitutionally vague. This challenge also misses the mark. As a threshold matter, because this case does not involve First Amendment overbreadth, Watson "has standing to raise a vagueness challenge only insofar as the statute is vague as applied to his . . . specific conduct." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 n.6 (6th Cir. 1995) (quoting *United States v. Pungitore*, 910 F.2d 1084, 1104 (3d Cir. 1990)). Due process mandates that laws governing conduct "must give an adequate warning of what they command or forbid." *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1335 (6th Cir. 1978).

Of course, these ordinances do not regulate Watson's conduct in any way. As the district court recognized, the cases Watson cites all involve criminal prohibitions and regulatory schemes. *See Wayne Watson Enters.*, 243 F. Supp. 3d at 926 (collecting cases); Appellant Br. at 41–42. In his reply brief, Watson also relies on cases where plaintiffs challenged zoning ordinances. *See, e.g.*, *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 835 (6th Cir. 2004); *Wedgewood Ltd. P'ship I v. Township of Liberty*, 456 F. Supp. 2d 904, 927 (S.D. Ohio 2006). These cases prove the point. First, *Brandywine* held that the plaintiffs had standing only for their First Amendment vagueness and overbreadth challenges. 359 F.3d at 835. Second, and more generally, zoning ordinances regulate what a business may or may not do. Here, the Ordinances simply permit

access roads and the creation of this particular access road over a public right-of-way. Thus, Watson's vagueness challenge fails.

## IV. CONCLUSION

Perhaps the City should have had the courtesy to inform Mr. Watson earlier than it did about this access road. The City Engineer acknowledged Mr. Watson would have pushback on the proposal—and push back he did. Especially in local government, which sits closest to the people, listening to such grievances is often a fundamental aspect of delivering quality service. But the bottom line remains: Based on the facts of this case, Watson has not been deprived of a property interest nor has he been subjected to any vague law within the meaning of the Due Process Clause of the Fourteenth Amendment. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

No. 17-3358, *Wayne Watson Enterprises, LLC et al. v. City of Cambridge et al.*

**JOHN K. BUSH, Circuit Judge, concurring.** I agree with the majority opinion but write separately to address a point that is a small one here but which may be significant in another case.

The majority affirms summary judgment on the due-process-property-deprivation claims because there is no evidence Watson was deprived of a constitutionally protected property interest. *See* Majority Opinion at 10. The majority correctly concludes that there was no property deprivation because the City did not (1) physically interfere with Watson's property; (2) interfere with his right to do business; or (3) interfere with his right of access to his property. *See id.* at 7. The majority opinion implies that categories (1)–(3) encompass all of the sticks in Watson's property-rights bundle under Ohio law. But there is also a category (4) that Ohio recognizes—a property right known as an "intangible interest in the premises." *State ex rel. OTR v. City of Columbus*, 667 N.E.2d 8, 12 (Ohio 1996); *McKee v. City of Akron*, 199 N.E.2d 592, 594–95 (Ohio 1964), *overruled on other grounds by Haverlack v. Portage Homes, Inc.*, 442 N.E. 2d 749 (Ohio 1982); *McNamara v. Rittman*, 838 N.E.2d 640, 645 (Ohio 2005). The omission of category (4) from the majority opinion's analysis is not consequential in this case, for (as the district court held) Watson has no evidence of any intangible interest of which he was deprived. *See Wayne Watson Enters., LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 921 (S.D. Ohio 2017) (collecting cases to demonstrate that the City has not interfered with Watson's intangible interest in his property recognized by Ohio). But intangible-interest rights could be implicated in another case applying Ohio law, and therefore those rights should also be acknowledged with other property rights in our statement of the law here.

13

No. 17-3358, *Wayne Watson Enterprises, LLC et al. v. City of Cambridge et al.*

The Ohio Supreme Court has not fully developed and defined all that is encompassed by a property owner's "intangible interest in the premises." But we do know from *McKee v. City of Akron* that "[p]hysical displacement is not always necessary" to interfere with an individual's protected property interests. 199 N.E.2d at 594. Indeed, the Ohio Supreme Court reiterated this principle in *OTR*: "[A]n interference [with a property interest] may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." 667 N.E.2d at 12. This principle of Ohio law reaches the government's improvements on its own land that do not physically intrude upon a person's property but intrude upon the person's intangible property rights. *See, e.g.*, *McNamara*, 838 N.E.2d at 645–46 (finding a taking where a city's groundwater wells, while drilled on its property, deprived private property owners of an intangible property interest in their ground water); *Smalley v. Ohio Dep't of Transp.*, 869 N.E.2d 777, 780, 783 (Ohio Ct. Cl. 2007) (finding a taking where Ohio's interstate lights, while on government property, interfered with a farmer's property interests because the lights damaged his crops).

In this case, therefore, we should consider not only whether the City has physically interfered with Watson's property and whether there has been any interference with his right to do business and right of access. We should also consider, as did the district court, whether there has been any interference with any of Watson's intangible property interests. Because Watson has no evidence that the City has interfered with any of his property rights recognized under Ohio law, Watson has not been deprived of any interest (tangible or intangible) in his property. It is with this

14

No. 17-3358, *Wayne Watson Enterprises, LLC et al. v. City of Cambridge et al.*

understanding, and also based on the reasons stated in the majority opinion, that I respectfully concur.