RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BENCH BILLBOARD COMPANY,

              *Plaintiff-Appellant,*

    *v.*

No. 10-3750

CITY OF CINCINNATI,

              *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00589—Susan J. Dlott, Chief District Judge.

Argued: January 13, 2012

Decided and Filed: April 10, 2012

Before: MERRITT and COLE, Circuit Judges; VARLAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Eric C. Holzapfel, THE DREW LAW FIRM CO., LPA, Cincinnati, Ohio, for Appellant. Richard Ganulin, CITY SOLICITOR'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Eric C. Holzapfel, Robert M. Smyth, THE DREW LAW FIRM CO., LPA, Cincinnati, Ohio, for Appellant. Richard Ganulin, CITY SOLICITOR'S OFFICE, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

THOMAS A. VARLAN, District Judge. This case arises out of Bench Billboard Company's desire to place its advertising benches on private property and in the public rights-of-way in the City of Cincinnati (the "City"). Bench Billboard Company ("Bench

---

[*] The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

Billboard") first sued the City in 1993, challenging the legality of the City's ordinances limiting Bench Billboard's ability to place its advertising benches in the public rights-of-way and on private property. The parties settled, and as part of the settlement, the City granted Bench Billboard three hundred replacement permits to place benches on private property and amended certain laws giving Bench Billboard access to place its benches in the City's rights-of-way. In 2006 and 2007, the City rescinded those amendments and amended its laws in other respects, which gave rise to the instant litigation. Bench Billboard asserted various claims against the City, including violations of its First Amendment and Fourteenth Amendment Equal Protection rights. Bench Billboard eventually moved for summary judgment, raising a non-conforming use claim as well. The City also filed a motion for summary judgment. Before the district court ruled on the motions, the City again amended the laws at issue in the litigation and then filed a motion to dismiss on mootness grounds. In ruling on the motions for summary judgment and the motion to dismiss, the district court determined that certain of Bench Billboard's claims were moot, that Bench Billboard lacked standing to bring its First Amendment claims, that Bench Billboard was not similarly situated for purposes of its equal-protection claim, that it would not consider Bench Billboard's non-conforming use claim, and that Bench Billboard was not a prevailing party. For the reasons explained herein, we affirm the judgment of the district court in all respects.

## I.  BACKGROUND

Bench Billboard is in the business of marketing and advertising products and services on the backrests of benches that it owns and installs on both public and private property. Bench Billboard specifically places benches on public property near bus stops, which are used in conjunction with the public bus transportation system. The advertising benches are approximately two feet wide, six feet in length, and forty-two inches tall. The backrest that forms the advertisement space is six feet wide by two feet high, resulting in twelve square feet of advertising space, but it is not illuminated. The two ends, or "footers," are made of pre-formed reinforced five-inch concrete. The advertising bench weighs approximately 475 pounds. Bench Billboard has used this

design since 1965, and approximately 722 advertising benches have been placed in the rights-of-way in the City of Cincinnati.

In 1993, Bench Billboard sued the City, challenging the legality of its ordinances limiting Bench Billboard's ability to place its advertising benches in the public rights-of-way and on private property. *See Bench Billboard Co. v. City of Cincinnati*, 1:93-CV-711 (S.D. Ohio 1993). Bench Billboard claimed that the City confiscated more than 200 of its advertising benches without due process and unlawfully refused to grant permits to Bench Billboard to place advertising benches on public and private property. Bench Billboard also claimed the City's ordinances granted preferential right-of-way access to bus stop shelters that contained advertising panels.

The parties settled the dispute in 1996. As part of the settlement, the City granted Bench Billboard three hundred replacement permits to place benches on private property. The City also passed Ordinance No. 187-1996, and amended Section 723-20 and Chapter 895 of the Cincinnati Municipal Code (the "Code"). Ordinance No. 187-1996 granted Bench Billboard "Special Street Privileges for the placement of benches and the placing of advertising thereon . . . notwithstanding any provisions of the Code relating to the posting of advertising signs or placement of benches on public property or public rights of way." (R. 82, Ex. 47). It also exempted Bench Billboard from Chapters 718 and 723 of the Code, and excluded Bench Billboard from the definition of an "outdoor advertising sign" subject to Chapter 895. The special street privilege was expressly revocable by the City.

Then City Solicitor Fay Dupuis noted that the special street privilege was intended to address "Bench Billboard's claims that the City [wa]s violating equal protection requirements by its grant of right-of-way space to bus stop shelters and refusal to accord equal treatment to advertising benches." (R. 79, Ex. 8). She further noted that the then-current ordinances "arguably grant[ed] preferential right of way access to bus stop shelters" and advised that the changes being made to the ordinances did "not address all weaknesses inherent in the existing statutory scheme." (*Id*.). She suggested that the City "develop a coordinated approach for permitted uses on the City right-of-

way which establish[] priorities for uses which are in the best interest of the public and assure equal treatment for similarly situated entities." (*Id*.).

In August 2006, the City repealed Ordinance No. 187-1996. Accordingly, Bench Billboard lost its revocable street privilege and again became subject to the provisions of the Code relating to posting of advertising signs or placement of benches on public property or public rights-of-way, Section 723-20. Under Section 723-20, Bench Billboard was limited to the placement of only one advertising bench at a bus stop and could place no benches at stops already served by an existing bus shelter or bench. Bench Billboard also became subject to Chapter 895, which addresses off-site advertising on private property.

In June 2007, prior to taking any action to enforce any Code provisions as to Bench Billboard, the City again amended Section 723-20 and Chapter 895 of the Code. The amendment to Section 723-20 included limiting the advertising space on bench billboards to eleven square feet in area and giving the City Manager "the authority to modify or waive any of the requirements of this Section when required for public safety." (R. 22 ¶ 53). The amendment to Chapter 895 removed the language excluding advertising benches from the definition of outdoor advertising signs. Accordingly, Bench Billboard was not able to place its benches in certain locations where it could have placed benches prior to the amendment (e.g., Bench Billboard could no longer place an advertising bench within 200 feet of a school or hospital).

Bench Billboard commenced this litigation on July 27, 2007, claiming the City's laws regulating the placement of advertising benches on public and private property violate the First and Fourteenth Amendments of the United States Constitution as well as state law. After commencement of the lawsuit, on November 28, 2007, the City again amended Section 723-20 to, among other things, create a lottery system for the placement of advertising benches and authorize the City Manager "to promulgate additional regulations necessary to effectuate the purposes of this chapter." (R. 22 ¶ 60). Bench Billboard amended its complaint accordingly on January 24, 2008.

The City moved to dismiss the amended complaint, and the district court determined the amended complaint failed to state a claim for a violation of substantive due process rights or breach of the settlement agreement from the parties' previous litigation. The district court, however, found Bench Billboard sufficiently plead its First Amendment claim that Section 723-20 was facially invalid because it granted the City Manager unbridled discretion, its First Amendment claim that the restrictions in Section 723-20 and Chapter 895 were more extensive than necessary to serve the City's interests, and its equal-protection claim that the City was intentionally and unlawfully discriminating against Bench Billboard.

A week after the Court entered its order concerning the City's motion to dismiss, the City again amended Section 723-20. Pursuant to that amendment, the City increased the allowable area of advertising on the benches from eleven to twelve square feet and deleted the language allegedly giving the City Manager unbridled discretion. At no time did the City enforce the provisions of Section 723-20 that were repealed, nor did the City remove any of Bench Billboard's benches from either public or private property.

Bench Billboard moved for summary judgment on the issue of liability only. Bench Billboard asserted that it was entitled to judgment in its favor on all remaining claims, that it was a prevailing party on its claim regarding the discretionary language included in former Section 723-20, that Section 723-20 and Chapter 895 are unconstitutional because the restrictions therein are more extensive than necessary to serve any governmental interest, and that the City unlawfully discriminates against it by giving preferential treatment to advertising bus shelters, banners, newsracks, and other advertising objects over advertising benches. Bench Billboard asserted that it was entitled to a declaratory judgment that the statutes are unconstitutional and that existing benches are lawful, non-conforming uses, as well as to injunctive relief requiring the City to grant it a street privilege.

The City also filed a motion for summary judgment. The City argued that Bench Billboard did not have standing to assert its First Amendment claims, that its challenge to the repealed subsection was moot, that there is no constitutional right to leave

advertising benches in the public rights-of-way, that the City's ordinances withstand constitutional scrutiny, and that Bench Billboard could not prove its equal-protection claim.

Prior to the district court's resolution of the parties' motions for summary judgment, the City passed Ordinance No. 363-2009. The ordinance amended Chapter 718—concerning revocable street privileges—and Chapter 723—concerning use regulations for streets and sidewalks—to institute a regulatory scheme that applies to park benches, planters, sandwich board signs, mailboxes, newsracks, bus stop shelters, outdoor dining areas, kiosks, sidewalk vending, and awnings, with the intent to, among other things, "limit advertising on structures in order to reduce visual distraction and clutter so as to protect pedestrian and traffic safety as well as improve the aesthetic qualities of city business districts and neighborhoods" and to "regulate the placement of structures within the rights-of-way in order to protect public safety and ensure adequate clearance for pedestrian traffic." (R. 100). Pursuant to the amendment, beginning January 1, 2013, bus stop shelters will no longer be able to contain advertising. Ordinance No. 363-2009 also deleted Section 723-20 and prohibited advertising benches altogether in the public rights-of-way. No amendment was made to Chapter 895 of the Code.[1]

Thereafter, the City moved to dismiss all of Bench Billboard's claims as moot. Bench Billboard opposed the motion, arguing that the City's modifications to Chapters 718 and 723 of the Code did not affect its claim that the prior versions were unconstitutional, and claiming that the new ordinance imposed no impact on its claim that Chapter 895 is unconstitutional. Further, Bench Billboard asserted that the new ordinance did not impact its claim for a declaratory judgment that its advertising benches constitute a valid, non-conforming use under the Code.

---

[1]Bench Billboard never amended its complaint to challenge this new legislation.

The district court granted the City's motion to dismiss on grounds of mootness in part, denied Bench Billboard's motion for summary judgment, and granted the City's motion for summary judgment.

## II. ANALYSIS

Although the City's motion to dismiss on mootness grounds was not made pursuant to a specific rule, the City argued that the amended and supplemental complaint should be dismissed for lack of jurisdiction. This Court reviews a district court's grant of a motion to dismiss for lack of jurisdiction *de novo*. *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002) (citation omitted). Likewise, this Court reviews a district court's conclusion of law with regard to mootness *de novo*. *Brandywine, Inc. v. City of Richmond, Kentucky*, 359 F.3d 830, 836 (6th Cir. 2004) (citation omitted).

This Court also reviews a district court's grant of summary judgment and dismissal for lack of standing *de novo*. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007) (citation omitted); *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006) (citation omitted). When we review "a grant of summary judgment on cross-motions seeking [summary judgment], we apply the same legal standards as the district court[.]" *In re Arctic Express Inc.*, 636 F.3d 781, 791 (6th Cir. 2011) (quoting *United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009)). We ask: "whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law." *Id.* (citations omitted).

A.    **Ordinance No. 363-2009 Mooted Bench Billboard's Claim that Section 723-20 of the Cincinnati Municipal Code Violated Its First Amendment Rights**

Before the district court, the City argued that the enactment of Ordinance No. 363-2009 mooted all of Bench Billboard's claims because a court may not consider the constitutionality nor enjoin the enforcement of a statute that is no longer in effect. In response, Bench Billboard asserted that its claims relating to the Code sections that were amended were not mooted because the City might again amend the ordinance to revert

to the allegedly unconstitutional language.  Further, Bench Billboard asserted that its claims for money damages were not mooted by the amendment.  Relevant to the instant appeal, the district court found that, under Sixth Circuit precedent, the deletion of Section 723-20 by Ordinance No. 363-2009 nullified Bench Billboard's claims for injunctive and declaratory relief with respect to that section.[2]  In doing so, the district court relied upon *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637 (6th Cir. 1997), and *Brandywine*.

Bench Billboard argues on appeal that the district court erred by finding *Kentucky Right to Life* and *Brandywine* dictated the result in this case, and in distinguishing this case from *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982), and *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000).  Bench Billboard submits that, in settling the previous litigation, the City acknowledged its unconstitutional treatment of Bench Billboard, changed the law, and granted Bench Billboard a special street privilege, but revoked the special street privilege ten years later.  Further, after Bench Billboard filed the instant action, the City amended the relevant sections of the Code three times: once after the filing of the complaint, once after the denial of its motion to dismiss, and once after the filing of its motion for summary judgment but before a decision was rendered.  Bench Billboard submits that the City's long history of unconstitutional behavior can therefore "reasonably be expected to recur."  (Appellant Br. 29–30).

"Article III of the Constitution confines the power of the federal courts to adjudication of 'cases' or 'controversies.'" *Ky. Right to Life*, 108 F.3d at 644 (citations omitted).  "The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case-or-controversy when a federal court decides a case." *Id.* (citation omitted).  "Legislative repeal or amendment of a challenged statute while a case is

---

[2]Citing Sixth Circuit law, the district court found that the deletion of Section 723-20 did not nullify Bench Billboard's claim for money damages.  *Bench Billboard Co. v. City of Cincinnati*, 717 F. Supp. 2d 771, 778 n.13, 779 n.15 (S.D. Ohio 2010) (citing *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637 (6th Cir. 1997), and *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004)).

pending on appeal usually eliminates this requisite case-or-controversy because a statute must be analyzed by the . . . court in its present form." *Id.* (citations omitted).

In *Kentucky Right to Life*, a panel of this Court addressed mootness where the Kentucky General Assembly amended an act while litigation regarding the constitutionality of that act was pending. *Id.* at 639. The panel held that the amendment mooted the plaintiffs' statutory challenges because those challenges were "effectively nullified by the recent statutory amendments." *Id.* at 644. In so holding, the panel distinguished *Aladdin's Castle*, a case in which the Supreme Court held that the city's repeal of an ordinance at issue did not moot the appeal because it "would not preclude [the city] from reenacting precisely the same provision if the District Court's judgment were vacated." 455 U.S. at 289 (footnote omitted). Critical to the holding in *Aladdin's Castle* and absent from the plaintiffs' case, the panel noted, "was the City's announced intention to reenact the unconstitutional ordinance if the case was dismissed as moot." *Ky. Right to Life*, 108 F.3d at 645 (footnote omitted). Likewise in *Brandywine*, a panel of this Court held that a city's repeal of an allegedly unconstitutional provision of an ordinance mooted the plaintiff's claims for declaratory and injunctive relief. 359 F.3d at 836. Again distinguishing *Aladdin's Castle*, the panel found that no threat to re-enact the ordinance was made. *Id.*

In enacting Ordinance No. 363-2009, the City deleted Section 723-20. Under *Kentucky Right to Life* and *Brandywine*, therefore, Bench Billboard's claims for injunctive and declaratory relief with respect to that section were mooted. Moreover, there is no evidence in the record that the City has announced any intention of, or made any threat to, reenact Section 723-20; indeed, the new ordinance constitutes an entirely new statutory scheme and prohibits bench billboards and other forms of advertising in the rights-of-way altogether. Thus, this action is distinguishable from *Aladdin's Castle*.

This action also is distinguishable from *Friends of the Earth* and *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008), cases relied upon by Bench Billboard. In *Friends of the Earth*, the Supreme Court stated that "'[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful

behavior could not reasonably be expected to recur.'"  528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).  *Friends of the Earth*, however, involved a private defendant who was charged with not complying with the terms of its permit governing the amount of treated water it could discharge into a nearby waterway.  528 U.S. at 175–77.  This Court has noted that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties" and that "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Mosely v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (citations omitted); *see also Fed'n of Adver. Indus. Representatives v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (noting that the *Friends of the Earth* standard "is the appropriate standard for cases between private parties, but this is not the view we have taken toward acts of voluntary cessation by government officials[,]" as "we place greater stock in their acts of self-correction, so long as they appear genuine" (citation and internal quotation marks omitted)).  Given that Ordinance No. 363-2009 was years in the making and attempted "to provide a framework for private uses of the public rights-of way within the City" and "procedures and standards governing a variety of private uses of the city sidewalks and other public right-of-way spaces," the City's enactment of the ordinance appears genuine.  (R. 100 at 5).

*People Against Police Violence* is a case from the Third Circuit.  In ruling on whether plaintiffs were a prevailing party for achieving relief on the merits of their claims in the form of a preliminary injunction even though they did not secure a final judgment in their favor, the Third Circuit rejected the city's argument that the district court's involvement in the case exceeded its jurisdiction under Article III.  520 F.3d at 231 n.2.  Citing *Friends of the Earth*, the court noted that "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice, if the conduct might reasonably be expected to recur."  *Id.* (citation omitted).  It further noted that repeal of a challenged ordinance "does not necessarily moot a challenge to the constitutionality of that ordinance if the ordinance, or one with similar constitutional infirmities, might be reenacted."  *Id.* (citations omitted).  Thus, the

court found that neither the defendant city's representation that it would no longer enforce the challenged ordinance nor its formal repeal of that ordinance thereafter deprived the district court of jurisdiction,

> particularly given that plaintiffs' complaint alleged a long history of unconstitutional conduct under the ordinance; the [c]ity had no alternate procedures in place pending revision of [the repealed ordinance]; and the [c]ity's initial proposals to amend [the challenged ordinance] gave the Court cause for concern that a new ordinance would have similar constitutional infirmities.

*Id.* Although Bench Billboard claims there is a long history of unconstitutional conduct here, as the City points out, the City has never admitted to any unconstitutional conduct and no court has concluded that the City acted unconstitutionally. Moreover, unlike in *People Against Police Violence*, the City here imposed an entirely new statutory scheme in place of the repealed ordinance, and there are no allegations that the new scheme poses any constitutional issues.

Accordingly, we conclude the district court correctly found that Bench Billboard's claims for injunctive and declaratory relief with respect to Section 723-20 were mooted by the enactment of Ordinance No. 363-2009.

### B.        Bench Billboard does not have Standing to Challenge the Constitutionality of Section 723-20 of the Cincinnati Municipal Code

With respect to Bench Billboard's claim that the restrictions set forth in Section 723-20 constituted an unlawful infringement on Bench Billboard's rights under the First Amendment, the City argued that Bench Billboard could not demonstrate any monetary damages and thus could not proceed to trial on its claim. Bench Billboard countered that Section 723-20 placed stricter requirements upon advertising benches—including, for example, higher fees (a \$30 application fee plus a \$10 annual renewal fee)—than upon bus shelters, newsracks, street banners, litter receptacles, or sandwich boards, and thus violated its First Amendment right to free expression.

The district court agreed with the City, finding that Bench Billboard failed to demonstrate an injury in fact and therefore lacked standing. In so finding, the district

court recognized that the Sixth Circuit has stated that an ordinance that requires "a person to pay a license or permit fee before he can engage in constitutionally protected activity does not violate the Constitution so long as the purpose of charging the fee is limited to defraying expenses incurred in furtherance of a legitimate state activity." *Bench Billboard Co. v. City of Cincinnati*, 717 F. Supp. 2d 771, 783 (S.D. Ohio 2010) (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson Cnty.*, 274 F.3d 377, 395 (6th Cir. 2001)) (internal quotation marks omitted).  Given that Bench Billboard received a benefit from any fees it paid—the right to place its advertising benches in the public rights-of-way—and the lack of any evidence or allegation that the advertising bench street privilege application and renewal fees required by Section 723-20 were not intended to defray expenses in furtherance of a legitimate state activity, the district court determined it could not find Bench Billboard suffered any injury in fact sufficient to confer standing to challenge the ordinance on First Amendment grounds. *Id.*

On appeal, Bench Billboard argues that its motion for summary judgment raised the issue of liability only, and that the issue as framed by the district court was not even addressed by the City in its motion.  The issue of standing, however, may be raised *sua sponte*. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) ("If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction. . . .  Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." (internal citations omitted)).  Thus, regardless of whether and how the issue was addressed by the City, the district court properly considered standing.

Three elements must be established to demonstrate constitutional standing:

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (footnote, citations, and internal quotation marks omitted).

The only injury claimed by Bench Billboard on appeal, which it also asserted before the district court, is the difference between the application and renewal fees paid by Bench Billboard and those fees paid by the other advertising media allowed by the City in its rights-of-ways. Bench Billboard submits that, pursuant to Section 723-20, it had to pay an initial fee of $30 plus an annual renewal fee to place its advertising bench in the City's rights-of-way, while owners of bus shelters had to pay only a $100 initial fee and owners of newsracks had to pay no fee at all. Given that after seven years Bench Billboard would begin paying more in fees than the owner of the bus shelters, it argues that an undue burden was placed on its speech by Section 723-20 and such represents an injury in fact.

As the district court recognized, "an ordinance requiring a person to pay a license or permit fee before he can engage in a constitutionally protected activity does not violate the Constitution so long as the purpose of charging the fee is limited to defraying expenses incurred in furtherance of a legitimate state activity." *Bench Billboard*, 717 F. Supp. 2d at 783 (quoting *Deja Vu*, 274 F.3d at 395 (citation omitted)). Bench Billboard alleges that the City violated the Constitution only insofar as the fees regarding advertising benches, required by repealed Section 723-20, added up over several years to exceed the fees regarding bus shelters. Bench Billboard, however, submitted no evidence to show that it had already paid fees in excess of those required for bus shelters, or bench billboards. Indeed, there was no evidence submitted that Bench Billboard paid any fees in 2006, the first year the fee was imposed, and only evidence that Bench Billboard's president believed he sent the City some money at some point, perhaps in 2007. Nor has Bench Billboard submitted evidence that it must continue paying fees despite the repeal of Section 723-20, such that it may eventually pay excessive fees. Because Bench Billboard does not show that it has paid or that it will pay fees that may be greater than necessary to "defray[] expenses incurred in furtherance

of a legitimate state activity," it has failed to demonstrate that it suffered any injury in fact as a result of fees required by Section 723-20.[3]

Bench Billboard implies that its standing is presumed and that the City has the burden to defeat standing. (*See* Appellant Br. 34 ("Although [Bench Billboard] would certainly agree with the District Court that Cincinnati may charge a fee to defray expenses 'incurred in furtherance of a legitimate state activity,' Cincinnati has the burden to explain why it is more expensive to inspect the advertising bench sign as opposed to the advertising bus shelter sign and why it does not cost anything to inspect the advertising newsracks.")). As the party invoking federal jurisdiction, however, Bench Billboard bears the burden of establishing standing. *Lujan*, 504 U.S. at 561. For all the reasons explained, Bench Billboard failed to meet that burden.

Accordingly, we conclude the district court correctly determined that Bench Billboard lacks standing to challenge Section 723-20 on First Amendment grounds.[4]

### C.    Bench Billboard does not have Standing the Challenge the Constitutionality of Chapter 895 of the Cincinnati Municipal Code

Before the district court, Bench Billboard alleged that Chapter 895 is not a reasonable fit to the City's asserted governmental interests and therefore unduly burdens its exercise of its First Amendment rights. Bench Billboard requested that the district court declare Chapter 895 unconstitutional on its face and as applied to Bench Billboard. The City argued that Bench Billboard did not have standing to challenge Chapter 895 either facially or as applied. The district court agreed with the City in both respects. *Bench Billboard*, 717 F. Supp. 2d at 784–86.

---

[3] Bench Billboard also asserted other injuries in the district court, which it does not appear to claim on appeal. First, Bench Billboard argued that it was injured when the City removed "two, maybe six" benches from the College Hill neighborhood. (R. 85-1 at 43–49). The City, however, introduced evidence that it did not remove any benches from College Hill. Bench Billboard also asserted that it suffered injury by incurring litigation costs against a business competitor to force that competitor to remove its benches from the City's right-of-way. However, Bench Billboard provided no evidence to demonstrate that the legal fees it incurred in pursuing the action constituted an injury traceable to the City's revocation of Bench Billboard's street privilege or enactment of the challenged ordinances.

[4] Although the parties' briefs discuss the merits of Bench Billboard's First Amendment claim, we decline to consider those arguments in light of our conclusion.

With respect to its as-applied attack, Bench Billboard argues that the district court "completely ignored" the impact of the 2007 amendment to Chapter 895 on Bench Billboard's ability to utilize the three hundred replacement permits granted to Bench Billboard in 1996. Bench Billboard claims the amendment "basically precluded [Bench Billboard] from placing 300 additional benches on private property in Cincinnati." (Appellant Br. 37). Thus, it has an injury in fact. The City counters that Bench Billboard's argument disregards the record, which establishes that "[o]pportunities still exist for placing advertising benches on private property and that the actual number of advertising bench billboards allowed on private property was not reduced." (Appellee Br. 48 (internal quotation marks omitted)).

Although the district court did not expressly mention the three hundred replacement permits, the district court did recognize Bench Billboard's assertion that it suffered an injury in fact in the form of the loss of potential sites for advertising benches as a result of the 2007 amendment to Chapter 895. Also, Bench Billboard does not claim, and did not claim below, that it ever attempted to place a bench on private property and was prohibited from doing so as a result of Chapter 895. Further, there is nothing in the record to establish that Bench Billboard cannot use the three hundred replacement permits; rather, the record establishes that there are opportunities to place advertising benches on private property, just in different places than before the amendment. Accordingly, we conclude Bench Billboard's injury is speculative and that the district court correctly determined that Bench Billboard lacks standing to posit an as-applied challenge to Chapter 895 on First Amendment grounds.

While it is unclear whether Bench Billboard challenges the district court's conclusion that it lacks standing to present a facial attack to Chapter 895, we conclude the district court was correct in finding that Bench Billboard lacked standing to so challenge Chapter 895. To facially challenge a statute on overbreadth grounds, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)

(citations omitted). Bench Billboard did not demonstrate any danger that Chapter 895 would compromise recognized First Amendment rights of parties not before the court. Bench Billboard also did not demonstrate that Chapter 895's existence would cause others not before the court to refrain from constitutionally protected speech or expression. *See Prime Media*, 485 F.3d at 348–49. Further, the Sixth Circuit has stated that a party asserting an overbreadth challenge still must show an injury in fact to challenge the provision. *Id.* at 350. Thus, for the reasons given by the district court and because Bench Billboard's argument concerning the three hundred replacement permits does not establish an injury in fact, we conclude the district court correctly determined that Bench Billboard lacks standing to present a facial attack to Chapter 895 on First Amendment grounds.[5]

### D.    The City's Treatment of Bench Billboard's Advertising Benches did not Violate its Right to Equal Protection under the Fourteenth Amendment

With respect to its equal-protection claim, Bench Billboard argued that, by subjecting it to the statutory conditions set forth in Chapter 895 and Section 723-20, while allowing Lamar, Inc. ("Lamar"), the owner of advertising bus shelters, to place advertising bus shelters in the rights-of-way pursuant to a street privilege, and while allowing trash receptacles, street banners, and sandwich board signs to be virtually unregulated and newsracks to be totally unregulated, the City violated its right to equal protection under the Fourteenth Amendment. Finding that Bench Billboard's claim fell within the "class of one" theory, the district court concluded that Bench Billboard did not demonstrate that it and other individual entities who were treated differently were similarly situated in all material aspects. *Bench Billboard*, 717 F. Supp. 2d at 796–88.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005) (citation omitted).

---

[5] *See*, *supra*, footnote 4.

The latter is known as the "class of one" theory. *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009) (citation omitted). As noted, the district court employed the "class of one" theory in assessing Bench Billboard's equal-protection claim. Although Bench Billboard takes issue with the district court's assessment of Bench Billboard's equal-protection claim under this theory in its opening brief, in its reply brief, Bench Billboard argues that the district court erred in utilizing the "class of one" theory and should have employed intermediate scrutiny because the City is regulating commercial speech.

Generally, this Court does not entertain arguments first made in reply briefs. *Osborne v. Hartford Life and Accident Ins. Co.*, 465 F.3d 296, 301 (6th Cir. 2005) (citation omitted). There is an exception to this principle, however, when "'[t]he issue raised is purely one of law requiring no new or amplified factual determination.'" *Logan v. Denny's, Inc.*, 259 F.3d 558, 570 n.6 (6th Cir. 2001) (alteration in original) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 244 (6th Cir. 1991)). Regardless, Bench Billboard's argument lacks merit. The City's actions are not subject to heightened scrutiny because its conduct "neither infringes on a class of people's fundamental rights nor targets a member of a suspect class." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Although Bench Billboard claims its First Amendment rights are at issue, the record reveals that Bench Billboard alleges only it was deprived of those rights. "The Supreme Court has only applied [heightened] scrutiny to equal protection claims where the plaintiff alleges that the government infringes on the fundamental right of a class of people[,]" *id.* at 260 (citing *Zablocki v. Redhail*, 434 U.S. 374, 383, 388 (1978)), and this Court has declined "to extend the fundamental rights analysis to classes of one[,]" *id.* at 261 (finding that "[t]o so extend the fundamental rights analysis would allow the Equal Protection Clause to render other constitutional provisions superfluous").

"To succeed on a 'class of one' equal protection claim, [a p]laintiff must first prove that it has been treated differently from similarly situated individuals." *Taylor Acquisitions*, 313 F. App'x at 836 (citations omitted). "To satisfy this threshold inquiry,

it must allege that it and other individuals who were treated differently were similarly situated in all material respects." *Id.* (citations omitted). In determining whether individuals are "similarly situated," a court should "not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (citation omitted).

Bench Billboard argues the district court erred in finding that "similarly situated" refers to the entities that own the various forms of advertising placed in the rights-of-ways. Rather, it claims, "similarly situated" refers to the "various forms of advertising allowed by [the City] on its right of ways"; that is, bus shelters, newsracks, and pole banners, among other things. (Appellant Br. 42). Bench Billboard provides no authority for this contention, and indeed, the Equal Protection Clause refutes the contention as it commands that no state shall "deny to any *person* within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added). Thus, the issue, as the district court determined, is whether the individuals or entities responsible for the placement of items in the City's rights-of-way are similarly situated in all material respects to Bench Billboard.

Bench Billboard and the individuals or entities responsible for the placement of items in the City's rights-of-way are not similarly situated because they each provide a distinct product or service to a different customer base. Lamar is the most similarly situated to Bench Billboard because it places ads in bus shelters, and they are both private, for-profit advertising companies. Lamar, however, has a contractual relationship with the Southwestern Ohio Regional Transit Authority, a regional transit authority created pursuant to Ohio law, for purposes of defraying the cost of constructing and maintaining the bus shelters. Bench Billboard has no such contractual relationship, and this is a material distinction. Accordingly, because Bench Billboard cannot establish that it is similarly situated to other entities that place advertising in the City's rights-of-way,

the City's treatment of Bench Billboard's advertising benches did not violate its right to equal protection under the Fourteenth Amendment.[6]

### E.        The District Court Did not Err in not Ruling on Bench Billboard's Non-Conforming Status Claim

In its motion for summary judgment, Bench Billboard argued that its advertising benches are lawful, non-conforming uses. The district court held that, because Bench Billboard did not properly raise the issue of non-conforming use status as a claim, it could not grant summary judgment to Bench Billboard on that basis.

Bench Billboard asserts that this Court should allow Bench Billboard to amend the complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. Bench Billboard claims that the Sixth Circuit has applied Rule 15 at the summary judgment stage and indicated that the primary concern in doing so is prejudice to the defendant. According to Bench Billboard, the issue of non-conforming use was fully briefed by both parties and did not require any new discovery. Further, Bench Billboard claims that the City was not surprised by the issue as it was raised during discovery, and that the City did not object to Bench Billboard raising it in the district court. Contrary to Bench Billboard's assertions, the City contends that it did object to Bench Billboard including the non-conforming use claim in its motion for summary judgment on the ground that the district court previously ruled that Bench Billboard failed to state a contract claim upon which relief could be granted.

This Court has applied Rule 15(b) at the summary judgment stage, and the primary concern when considering whether to allow a late amendment of the complaint is the possible prejudice to the defendant. *See Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1030 (6th Cir. 1992). A review of the record reveals the City, in fact, objected to Bench Billboard's assertion of a non-conforming use claim because the district court previously ruled that Bench Billboard failed to state a contract claim upon which relief could be granted. And although the district court did not use the term "prejudice" in

---

[6] "[W]e need not apply the rational basis test" given that plaintiff "fail[s] to demonstrate the existence of any similarly situated [persons]." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) (citations omitted).

discussing whether it would consider the claim, it noted that it "first became aware of this argument when reviewing Bench Billboard's motion for summary judgment, which Bench Billboard filed approximately two years after filing its complaint in this case[,]" and that it could not know if Bench Billboard is seeking this relief in conjunction with its claim the City breached the terms of the 1996 Settlement Agreement (which has been dismissed), its claim that the City is violating its Fourteenth Amendment rights by no subjecting bus shelters to the same limitations as advertising benches (which claims is herein resolved in favor of the Defendant), or some other independent claim for declaratory or injunctive relief. *Bench Billboard*, 717 F. Supp. 2d at 788 (footnote omitted). Given the district court's analysis, we find the district court concluded that the City would have been prejudiced by the late amendment. Thus, it did not err in not ruling on Bench Billboard's non-conforming use claim.

### F.     Prevailing Party Status Under 42 U.S.C. § 1988

Before the district court, Bench Billboard argued that it was a prevailing party and therefore entitled to attorneys fees pursuant to 42 U.S.C. § 1988(b) as a result of the City enacting Ordinance No. 229-2008, which deleted the language in Section 723-20 giving the City Manager discretionary authority. The district court determined that the amendment could not confer prevailing party status on Bench Billboard because the amendment was neither the result of judgment on the merits nor a court-ordered consent decree, nor was it compelled through a judicially sanctioned change on the legal relationship of the parties. Moreover, the district court determined that Bench Billboard's assertion that it was in a worse position than it was when it filed the complaint was irreconcilable with its argument that it was a prevailing party because of the amendment. *Bench Billboard*, 717 F. Supp. 2d at 789–90.

Bench Billboard does not address the correctness of the district court's decision on appeal, but requests that this Court reverse the rulings of the district court that will give Bench Billboard prevailing party status. Because we find no basis to reverse the rulings of the district court, and because Bench Billboard does not take issue with the district court's conclusion stated above, we need not address this issue.

## III.  CONCLUSION

For the reasons explained herein, we **AFFIRM** the judgment of the district court.