IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2021 Session

## ELIJAH "LIJ" SHAW ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Chancery Court for Davidson County**
**No. 17-1299-II        Anne C. Martin, Chancellor**

_____

### No. M2019-01926-COA-R3-CV

_____

Two homeowners filed suit against a metropolitan government challenging a metropolitan code provision that prevented them from serving customers at their home-based businesses. The trial court granted summary judgment to the metropolitan government. After the homeowners filed this appeal, the metropolitan council repealed the challenged code provision and enacted a new provision allowing certain home-based businesses to serve up to six clients a day. We have determined that, in light of the metropolitan government's enactment of the new ordinance, this appeal is moot.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and J. STEVEN STAFFORD, P.J., W.S., joined.

Braden H. Boucek, Nashville, Tennessee, and Paul V. Avelar and Keith E. Diggs, Tempe, Arizona, for the appellants, Elijah Shaw and Patricia Raynor.

Lora Barkenbus Fox, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Elijah "Lij" Shaw is a record producer who maintains a recording studio in a detached garage at his residence in Nashville. Patricia Raynor is a licensed cosmetologist who renovated her garage in Nashville and obtained a license to operate a hair salon there. Mr. Shaw and Ms. Raynor ("Homeowners") both received notices to correct from the Department of Codes and Building Safety ordering them to cease operating their businesses

or face prosecution, fines, and court costs. Homeowners filed a complaint in December 2017 against the Metropolitan Government of Nashville and Davidson County ("Metro") challenging the constitutionality of a provision of Metro's zoning code, Metro Code § 17.16.250(D)(1), applicable to most, but not all, home-based businesses.

The challenged provision states that "[n]o clients or patrons may be served on the property." Metro Code § 17.16.250(D)(1). Homeowners asserted that this "client prohibition" violates their right to substantive due process pursuant to article I, section 8 of the Tennessee Constitution and their right to equal protection pursuant to article I, section 8 and article XI, section 8 of the Tennessee Constitution. They requested a declaration that the challenged provision was unconstitutional as applied to them and entry of a permanent injunction prohibiting enforcement against them.

Metro filed a motion to dismiss arguing that the client prohibition was rationally related to the legitimate goal of protecting the residential nature of neighborhoods. The trial court denied the motion, and Metro filed an answer. The parties engaged in discovery. Over Metro's objections, the trial court ordered Metro to produce a Tenn. R. Civ. P. 30.02(6) witness to explain the reasons why the Metro council had declined to enact legislation allowing clients to visit home-based businesses. Both sides moved for summary judgment, and the trial court granted Metro's motion, concluding that the client prohibition "has a rational relationship to the public safety, health, morals, comfort, and welfare of the people of Nashville." Homeowners appealed.

After the filing of the record on appeal, the Metro council repealed Metro Code § 17.16.250(D)(1) and enacted a new ordinance allowing up to six client visits a day at certain home-based businesses. On appeal, Homeowners assert that the trial court erred (1) by disregarding every fact tending to show the irrationality of the regulation at issue as applied to them, (2) in granting summary judgment to Metro on Homeowners' equal protection claim, and (3) in granting summary judgment to Metro on Homeowners' substantive due process claim. Metro raises the additional arguments that (1) the trial court erred when it required Metro to produce a Tenn. R. Civ. P. 30.02(6) witness to proffer the rational reasons that the Metro council prohibited clients at home-based businesses and (2) the post-judgment enactment of ordinance BL2019-48, which repeals in its entirety the provision prohibiting clients from visiting home businesses, renders this lawsuit moot.

ANALYSIS

We begin with Metro's mootness argument. According to Metro, the enactment of ordinance BL2019-48 renders this lawsuit moot. The ordinance repealed Metro Code § 17.16.250(D) and replaced it with a new version of the same subsection that allows "no more than three [customer] visits per hour and a maximum of six total visits per day." Metro Code § 17.16.250(D)(3)(b) (July 2020). The new subsection permits certain types of businesses as "home occupations," including "[p]ersonal care services," and

"[m]ultimedia production." Metro Code § 17.16.250(D)(5)(b). Thus, Homeowners' businesses are covered by the new code provisions.

The mootness doctrine is rooted in the idea that it is "'the province of a court . . . to decide, not advise, and to settle rights, not to give abstract opinions.'" *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203 (Tenn. 2009) (quoting *State v. Wilson,* 70 Tenn. 204, 210 (1879)). The doctrine requires that "[a] case must remain justiciable (remain a legal controversy) from the time it is filed until the moment of final appellate disposition." *Id.* at 203-04. This Court has previously explained that "[a]n issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment." *Witt v. Witt*, No. E2017-00884-COA-R3-CV, 2018 WL 1505485, at *4 (Tenn. Ct. App. Mar. 27, 2018) (citations omitted). A case may become moot as a result of a "court decision, acts of the parties, or some other reason occurring after commencement of the case." *Norma Faye*, 301 S.W.3d at 204.

When determining whether a case should be dismissed as moot, courts "consider many factors, including the reason that the case is alleged to be moot, the stage of the proceeding, the importance of the issue to the public, and the probability that the issue will recur." *Id.* Tennessee courts "have recognized several circumstances that provide a basis for *not* invoking the mootness doctrine." *Id.* (emphasis added). The circumstances upon which courts base exceptions to the mootness doctrine include the following:

> (1) when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct.

*Id.* (footnotes omitted). It is the fourth set of circumstances, referred to as voluntary cessation, that Homeowners cite to support their argument that mootness should not be applied here.

The key Tennessee Supreme Court case on voluntary cessation is *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County*, 301 S.W.3d at 196. In that case, the Court set forth governing principles regarding voluntary cessation, based in large part upon cases from the United States Supreme Court:

> The [United States Supreme] Court's decisions reflect a jaundiced attitude about permitting a litigant to cease its wrongful conduct temporarily to frustrate judicial review and then be free to resume the same conduct after

the case is dismissed as moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S. Ct. 894, 97 L. Ed. 1303 (1953). Accordingly, the United States Supreme Court has concluded that, as a general rule, the voluntary cessation of allegedly illegal conduct does not suffice to moot a case. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. at 174, 120 S. Ct. 693; *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979).

The United States Supreme Court has not completely ruled out finding mootness based on the voluntary cessation of illegal conduct. The Court has determined that a case may be dismissed as moot when it is *absolutely clear that the allegedly wrongful conduct cannot be reasonably expected to recur. Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. at 189, 120 S. Ct. 693. This standard purposely places a heavy burden on the party attempting to convince a court that its voluntary cessation of allegedly illegal conduct has mooted the case. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. at 719, 127 S. Ct. 2738; *County of Los Angeles v. Davis*, 440 U.S. at 644, 99 S. Ct. 1379; *United States v. W.T. Grant Co.*, 345 U.S. at 633, 73 S. Ct. 894. Many states have adopted the United States Supreme Court's approach to assessing the effect of voluntary cessation on mootness.

*Id.* at 205 (emphasis added) (footnotes omitted).

The Court in *Norma Faye* addressed the application of voluntary cessation to cases involving a government defendant:

While there is broad acceptance of these general principles, there appears to be less agreement regarding the application of these principles when the defendant is a government entity or official. While the United States Supreme Court has not addressed this question directly, it seemingly is prepared to place the same burden of persuasion on government parties that it has explicitly placed on private parties. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. at 719, 127 S. Ct. 2738; *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221-22, 120 S. Ct. 722, 145 L.Ed.2d 650 (2000); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982); *County of Los Angeles v. Davis*, 440 U.S. at 631, 99 S. Ct. 1379; *see also DeFunis v. Odegaard*, 416 U.S. 312, 318, 94 S. Ct. 1704, 40 L. Ed. 2d 164 (1974) (indicating that if mootness arose solely because of voluntary cessation by the government rather than other causes that heightened burden would be applied to the

government). In the absence of a definitive decision by the United States Supreme Court, the United States Courts of Appeal have viewed voluntary cessation of allegedly illegal conduct by governmental actors with "more solicitude" than similar conduct by private parties. *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988); *see, e.g.*, *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004)[.] However, the federal circuit courts have been inconsistent in their approach, repeatedly applying the same burden to governmental actors as is applied to private actors. *See*, *e.g.*, *United States v. Brandau*, 578 F.3d 1064, 1069 n.2 (9th Cir. 2009); *Xing Lin v. Chertoff*, 307 Fed.Appx. 175, 178-79 (10th Cir. 2009); *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1175 (11th Cir. 2006).

We are wary of adopting an approach to mootness through voluntary cessation that treats government litigants and private litigants differently. However, we also recognize the long-standing rebuttable presumption that government officials will discharge their duties in good faith and in accordance with the law. *Mitchell v. Garrett*, 510 S.W.2d 894, 898 (Tenn. 1974); *Reeder v. Holt*, 220 Tenn. 428, 435-36, 418 S.W.2d 249, 252 (1967); *Mayes v. Bailey*, 209 Tenn. 186, 192-93, 352 S.W.2d 220, 223 (1961); *State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 775 (Tenn. Ct. App. 2001). Like the justiciability doctrines themselves, this presumption arises from the separation of powers provisions in Article II, Sections 1 and 2 of the Constitution of Tennessee.

We have determined that the mandates of the Constitution of Tennessee and the interests of the parties are best served by holding that the burden of persuading a court that a case has become moot as a result of the voluntary cessation of the challenged conduct is and remains on the party asserting that the case is moot. *However, when the party asserting that the case has become moot based on the cessation of its own conduct is a government entity or official, the court may, if justified by the circumstances of the case, require the opposing party to demonstrate why the proceeding should not be dismissed for mootness.*

*Id.* at 205-06 (emphasis added) (footnotes omitted). Based upon the final sentence of this quotation from *Norma Faye*, Metro argues that, under the circumstances of this case, the burden should be on Homeowners to show why the case should not be dismissed for mootness.

In *Norma Faye*, a city and county filed a condemnation action against a property owner in order to develop an industrial park. *Id.* at 200. The Court was presented with the issue of whether the trial court erred in failing to dismiss the complaint because it was filed

before the city and county had obtained the required certificate of public purpose and necessity. *Id.* at 200-01. The trial court granted the city's and county's request to vacate the voluntary dismissal of their original complaint, consolidated the condemnation proceedings with the property owner's counterclaim for partition, and denied the property owner's request for an interlocutory appeal. *Id.* at 201. This court declined to grant the property owner's request for an extraordinary appeal. *Id.* After the Supreme Court granted an extraordinary appeal, the city and the county "formally abandoned their efforts to condemn the property and requested [the] Court to dismiss the property owner's appeal on the grounds of mootness." *Id.* at 200.

The *Norma Faye* Court considered the application of the voluntary cessation exception to mootness. *Id.* at 207. The Court sought to determine whether the city and county had "abandoned their belief that state law permits them to file a petition to condemn property in order to develop an industrial park without first obtaining the certificate of public purpose and necessity required by Tenn. Code Ann. § 13-16-207(f)." *Id.* At oral argument, the city and the county insisted that they could file condemnation petitions "without first obtaining the certificate required" by statute. *Id.* The Court therefore concluded that, "while the City and the County have changed their practices for this plaintiff, they have not completely and permanently abandoned the challenged practice." *Id.* The Court continued:

> A permanent policy change by a government entity that is not likely to be abandoned once the immediate threat of litigation is passed may very well be sufficient to support a finding of mootness on the ground of voluntary cessation. 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper FEDERAL PRACTICE AND PROCEDURE § 3533.7, at 342-43. However, a policy change merely for an individual plaintiff is not. Based on this assertion, we decline to find that either the City or the County has voluntarily abandoned the conduct that Lynch LLC claims is contrary to the requirements of Tenn. Code Ann. § 13-16-207(f). Therefore, we find that the City and the County have failed to demonstrate that the issues in this case have become moot as a result of their voluntary abandonment of their efforts to condemn the property in which Lynch LLC owns a one-fifth interest.

*Id.*

Thus, although the language relied upon by Metro states that, where the party arguing mootness is a governmental entity, a court may shift the burden of persuasion to the opposing party, the Court in *Norma Faye* required the city and the county to demonstrate voluntary abandonment and found that they had failed to do so. *Id.* Rather, the Court determined that the City and the County had not "completely and permanently abandoned the challenged practice." *Id.* The *Norma Faye* opinion does not provide guidance as to what circumstances would justify shifting the burden of persuasion to the

opposing party to demonstrate that "the allegedly wrongful conduct cannot be reasonably expected to recur." *Id.* at 205.

Although we conclude that the burden of persuasion remains on Metro, we find instructive the approach described by the Sixth Circuit in *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019):

Although the bar is high for when voluntary cessation by a private party will moot a claim, the burden in showing mootness is lower when it is the government that has voluntarily ceased its conduct. When a private party has voluntarily ceased its alleged illegal conduct, the Supreme Court has explained that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). We have noted, however, "that 'cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties' and that '[the government's] self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine.'" *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012) (quoting *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990)). As the Ninth Circuit has commented, government action receives this solicitude because courts assume "that [the government] acts in good faith." *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018) (citation omitted). Namely, we presume that the same allegedly wrongful conduct by the government is unlikely to recur. *See Friends of the Earth*, 528 U.S. at 189, 120 S. Ct. 693. *See also* 13C Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. JURIS. § 3533.7 (3d ed. 2008) ("Courts are more likely to trust public defendants to honor a professed commitment to changed ways; individual public defendants may be replaced in office by new individuals, with effects that have little parallel as to private defendants; remedial calculations may be shaped by radiations of public interest; administrative orders may seem to die or evolve in ways that leave present or future impact unclear."). We have employed this solicitude for both legislative and non-legislative governmental actions. *See Hanrahan v. Mohr*, 905 F.3d 947, 961-62 (6th Cir. 2018); *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003).

*Speech First*, 939 F.3d 767-68. In *Norma Faye*, our Supreme Court "recognize[d] the long-standing rebuttable presumption that government officials will discharge their duties in good faith and in accordance with the law." *Norma Faye*, 301 S.W.3d at 206. Thus, we consider it appropriate to give Metro's actions in repealing the challenged ordinance a presumption of good faith.

The voluntary cessation exception to mootness was at issue in *Melton v. City of Lakeland*, No. W2018-01237-COA-R3-CV, 2019 WL 2375431, at *2 (Tenn. Ct. App. June 5, 2019). A group of citizens challenged the actions of the city and its industrial board in passing resolutions to fund the construction of a new high school. *Melton*, 2019 WL 2375431, at *1. During the pendency of the lawsuit, a new federal law rendered the funding transactions enacted by the resolutions "unworkable due to the increase in cost." *Id.* The defendants subsequently repealed the challenged resolutions, and the trial court dismissed the case as moot. *Id.* On appeal, the plaintiffs argued that the trial court erred in failing to consider the voluntary cessation exception. *Id.* at *2. The court distinguished the facts before it from *Norma Faye*, where the defendants "explicitly stated that they believed it was unnecessary to acquire a certificate of public purpose and necessity" and, therefore, the Court "knew with reasonable certainty" that the defendants "would again fail to acquire the certificate as required by Tennessee law." *Id.* at *3. The *Melton* court proceeded to discuss the key facts in the case before it:

> Here, however, Defendants have not indicated that they plan to engage in the allegedly unlawful conduct in the future. Moreover, while Plaintiffs may presume that the construction of the high school will be funded by the issuance of bonds, this Court cannot speculate as to the intricacies of a hypothetical bond transaction and whether or not it will comply with Tennessee law. Additionally, Defendants did not abandon or voluntarily cease their allegedly unlawful conduct; rather, Congress' enactment of the Tax Cuts and Jobs Act rendered the Bond Transaction unworkable. As such, the changes in the federal tax code—not any act by Defendants—effectively nullified the Bond Transaction. This is significant because, as noted by the *Norma Faye* Court, the *rationale behind the voluntary cessation exception to the mootness doctrine is to prohibit a litigant from temporarily ceasing its wrongful conduct in order to frustrate judicial review, only to resume such conduct after the case has been dismissed as moot. See id.* at 205. Here, Defendants did not "temporarily cease" their allegedly unlawful conduct to frustrate judicial review, and whether they will "resume such conduct" is entirely speculative since it was predicated on the federal tax code. Accordingly, we conclude that the voluntary cessation exception to the mootness doctrine is inapplicable.

*Id.* (emphasis added) (footnote omitted).[1]

---

[1] Metro cites *Home Builders Association of Middle Tennessee v. Metropolitan Government of Nashville & Davidson County*, No. M2018-00834-COA-R3-CV, 2019 WL 369271 (Tenn. Ct. App. Jan. 30, 2019), in support of its mootness argument. *Home Builders* did not implicate the voluntary cessation exception, and we consider it distinguishable.

Unlike in *Melton*, Metro repealed the challenged code provision and was not forced to do so by federal or state law. Unlike in *Norma Faye*, Metro has not announced a continuing belief that it can or will prohibit clients at certain home-based businesses. However, as Homeowners emphasize, Metro has not unequivocally stated that no such prohibition will be enacted in the future. How can we determine whether the challenged conduct "cannot be reasonably expected to recur"? *Norma Faye*, 301 S.W.3d at 205.

In *Speech First*, the Sixth Circuit stated that a determination of "whether the ceased action 'could not reasonably be expected to recur' takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." *Speech First*, 939 F.3d at 768 (citation omitted). In considering the relevant circumstances, the court in *Speech First* reasoned that, "Where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, that change will presumptively moot the case unless there are clear contraindications that the change is not genuine." *Id.* The court contrasted legislative cessation with regulatory changes and concluded that the challenged definitions before it were due only the solicitude given to an ad hoc regulatory action, a degree of solicitude that did not "relieve the University of much of its burden to show that the case is moot."[2] *Id.* at 769.

In the present case, Metro legislatively changed the challenged code provision and is, therefore, entitled to a presumption that it acted in good faith unless "there are clear contraindications that the change is not genuine." *Id.* at 768. Homeowners point to the sunset provision in the new ordinance and Metro's "continuing refusal to say how the sunset provision will operate" in support of their voluntary cessation exception argument. Under the sunset provision, subsection D of Metro Code § 17.16.250 "shall expire and be null and void on January 7, 2023 unless extended by resolution of the metropolitan council." Metro Code § 17.16.250(D)(9). In the preamble to BL2019-48, the ordinance cited the hardship on residents seeking additional income and the barrier for children seeking educational services created by the existing prohibition on client visits to home-based businesses. The ordinance's preamble further found that "permitting limited home-based business activity will protect the residential character of neighborhoods while allowing more Nashvillians to earn supplemental income to remain in their homes." As Metro points out, the council's actions in 2023 will depend upon the new "ordinance's effects on residential neighborhoods." Although the timing of Metro's passage of BL2019-48 does not bolster its case, we conclude that, in light of the new ordinance, there are no "clear contraindications that the change is not genuine" sufficient to overcome the

---

[2] In determining that the University did not meet its burden of establishing that the conduct "'could not reasonably be expected to recur,'" the *Speech First* court considered the absence of a binding statement that the university did not intend to reenact the challenged definitions, the timing of the change in policy (after the complaint was filed), and the university's continuing defense of the challenged definitions. *Speech First*, 939 F.3d at 769-70.

presumption that Metro acted in good faith. *Speech First*, 939 F.3d at 768. We, therefore, find this appeal to be moot.

CONCLUSION

The appeal is dismissed and the case is remanded to the trial court to vacate the judgment and dismiss the case. Costs of this appeal are assessed against the appellants, Elijah Shaw and Patricia Raynor, for which execution may issue if necessary.


_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE